IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THUY VO, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 18-1364 |
| | ) | District Judge Nicholas J. Ranjan |
| v. | ) | Magistrate Judge Maureen P. Kelly |
| | ) | |
| ROBERT GILMORE, MICHAEL ZAKEN, | ) | Re: ECF No. 95 |
| and STEPHEN DURCO, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

I.  **RECOMMENDATION**

Plaintiff Thuy Vo ("Plaintiff"), an inmate incarcerated at the State Correctional Institution at Greene ("SCI-Greene"), claims that a policy of video recording strip searches at SCI-Greene violates his Fourth Amendment rights. ECF No. 26.

Before the Court is a Motion for Summary Judgment filed by Defendants Robert Gilmore ("Gilmore"), Michael Zaken ("Zaken"), and Stephen Durco ("Durco") (collectively, "Defendants"). ECF No. 95. For the following reasons, it is respectfully recommended that Defendants' Motion for Summary Judgment be granted.

II.  **REPORT**

A.  **FACTUAL AND PROCEDURAL BACKGROUND**

**1. Plaintiff's Claims**

Plaintiff initiated this *pro se* prisoner civil rights action pursuant to 42 U.S.C. § 1983 on October 15, 2018. ECF Nos. 1, 8. In the operative Amended Complaint, Plaintiff claims that Defendants violated his Fourth Amendment right to bodily privacy by "implement[ing] a policy

of video-recording strip searches of inmates going to, and coming from contact visits, and while using the bathroom. ECF No. 26 ¶ 8. Plaintiff alleges that, beginning in approximately March 2018, inmates have been "subjected to strip-searches with their genitals and private parts in full view of a 360 degree ceiling camera every time they wish to have contact visits, or use the bathroom during visits." Id. ¶ 12. These recorded images are then "digitally recorded and stored for an unknown amount of time," and are "viewed at all times by SCI-Greene's security staff," which includes prison officials who are not present during the search and individuals of the opposite sex. Id. ¶ 13. Plaintiff also claims that this practice is not implemented in accordance with Pennsylvania Department of Corrections ("DOC") policy but is instead an SCI-Greene policy that Defendants implemented in retaliation for an inmate's prior assault of a prison official. Id. ¶¶ 8-9.

Plaintiff asserts this claim against three current or former employees at SCI-Greene. During the relevant time, Gilmore was Superintendent and Durco was a Corrections Officer, in the role of Security Captain. ECF No. 97 ¶¶ 4-5. Zaken is the current Superintendent, and he previously served as the Deputy Superintendent for Facilities Management. Id. ¶ 6.

    **2. Statement of Facts**

        **a. Visiting room strip search procedure**

Inmates are routinely strip searched upon entering or leaving the visiting room at SCI-Greene. Id. ¶ 25. This practice was implemented for security purposes, primarily to ensure that contraband is not passed to and from inmates during their contact visits in the visiting room. Id. ¶ 26.

Prison staff conduct these strip searches in a secure area near the visiting room. Id. ¶ 27. The room is divided by a short wall, with a toilet on one side of the wall. Id. The searches are

performed in accordance with DOC policy, and prison staff members are not permitted to touch inmates while conducting these searches. Id. ¶ 25.

### b. Video recording of strip searches

In the past, incidents have occurred while conducting strip searches that have required the use of force against inmates. Id. ¶ 28. Inmates have also raised claims of excessive force or other abuse against DOC staff. Id. To address these issues, officials at SCI-Greene implemented a policy of videotaping these strip searches and installed a video camera to record the visiting strip room searches. Id. ¶ 29.

According to Defendants, various precautions were put in place to protect inmates' privacy. In particular, a security cage was installed, which provides a physical barrier between the inmates and DOC staff. Id. ¶ 30. This cage has an opaque barrier that, when used properly, shields inmates' genitals and private areas from the camera's view. Id. The camera is a "fixed" camera that focuses on the visiting room strip search area; it does not record the bathroom area. Id. ¶¶ 32-34.[1]

Plaintiff contends that the security cage has been left open during strip searches, which has led to the camera recording images of his genitals and private areas. ECF No. 104 ¶ 16. Defendants admit that officers have at times failed to use this barrier in the past, but they claim that this issue has since been corrected. ECF No. 107-1 ¶¶ 37-39.

There is a live video feed from the strip search area of the visiting room, which can be viewed only in the Security Office. ECF No. 97 ¶ 34. The live video feed is not transmitted to a dedicated video monitor, and it is not monitored at all times. Id. ¶ 38. If the need arises, video from the feed can be called up to a monitor for viewing or to be preserved, with approval from an

---

[1] Although Plaintiff disputes that the camera is a fixed camera, ECF No. 104 ¶ 17, there is no document in the record that supports this assertion.

officer from the Security Office. Id. ¶¶ 40-41. Access to the Security Office is limited, and only Security Office staff and senior administration officials can enter this room. Id. ¶¶ 35-36.

Video from the visiting room of the strip search room is viewed or preserved only when there is a documented incident, an allegation of abuse, or there is other just cause to review and preserve the video. Id. ¶ 40. The video is recorded on a loop, so that it is overwritten within approximately 30-45 days if no incidents are reported and/or there is no request to preserve the video. Id. ¶ 42.

### c. Cross-gender viewing of strip searches

Under the DOC's Prison Rape Elimination Act ("PREA") policy, cross-gender strip searches are not permitted except in exigent circumstances. Id. ¶ 44. This policy does not address whether cross-gender viewing of surveillance footage is permitted. Id. ¶ 48. There are no female staff assigned to the Security Office at SCI-Greene, and Defendants are unaware of any occasions when a female officer has viewed video feed from the visiting room strip search room. Id. ¶¶ 50-51. If a female officer would be assigned to the Security Office at some point, Zaken claims that the Security Office would review the issue of access to footage from the visiting room strip searches. Id. ¶ 50.

### d. Grievances/PREA Complaint

Plaintiff did not file a grievance relative to his claims in this action. ECF No. 100-1 ¶¶ 18-19. On August 29, 2018, Plaintiff submitted a PREA complaint related to events that occurred on March 29 and March 30, 2018, which stated:

> I went to the visiting strip for a visit. I was strip searched on camera upon arrival and the time of leaving on the date and time of state above. There is no official duty justification in this circumstance because the strip search procedure is a[s] follows: The C.O. inspects the jump suit for holes, the inmate removes all clothing and hands it to the C.O. for inspection, the inmate opens his mouth, lifts his tongue and does a gum sweep, run fingers through his hair, shows his

4

underarms and between his fingers, lifts his penis and scrotum, turns and lifts his feet and spreads his toes, bends over and exposes his anus. All this are done by a C.O. that stands in the doorway in the full view of the camera outside of the strip room. There is nothing a camera will see that the C.O. does not so there is no purpose for these cameras other than to record naked images of inmates.

ECF No. 105-1 at 2-3.

Plaintiff mailed this complaint to the Pennsylvania State Police BCI/PREA coordinator in Harrisburg, Pennsylvania. Id. at 4. Defendants claim that they did not receive notice of Plaintiff's PREA complaint before this lawsuit. ECF No. 97 ¶ 24; ECF No. 106 at 3 n. 3.

### 3. Procedural History

Plaintiff initiated this action by filing a Motion for Leave to Proceed *in forma pauperis* on October 15, 2018. ECF No. 1. The Court granted Plaintiff's request to proceed *in forma pauperis*, and his original Complaint was filed on November 27, 2018. ECF Nos. 7 and 8.

Defendants first moved to dismiss Plaintiff's Complaint on February 6, 2019. ECF No. 13. Plaintiff amended his Complaint on February 22, 2019, eliminating all claims other than his Fourth Amendment claim. ECF No. 26. In response, Defendants filed a renewed Motion to Dismiss Plaintiff's Amended Complaint on March 11, 2019. ECF No. 30. A Report and Recommendation was issued on July 25, 2019, recommending that the Motion to Dismiss be denied. ECF No. 44. United States District Judge Nicholas J. Ranjan adopted the Report and Recommendation on August 13, 2019. ECF No. 47.

The parties conducted discovery. On May 15, 2020, Defendants filed the instant Motion for Summary Judgment, Brief in Support, Concise Statement of Material Facts, and supporting Appendix. ECF Nos. 95, 96, 97, and 98. On May 18, 2020, Defendants supplemented the Appendix. ECF No. 100.

On June 15, 2020, Plaintiff filed a Brief in Opposition, a Responsive Concise Statement, and an Appendix.  ECF Nos. 103, 104 and 107.

Defendants filed a Reply and a Supplemental Declaration of Zaken.  ECF Nos. 106 and 107.  Plaintiff filed a Sur-Reply.  ECF No. 116.

The Motion for Summary Judgment is ripe for consideration.

**B.     STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof").  Thus, summary judgment is warranted where, "after adequate time for discovery and upon motion . . . a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of demonstrating to the court that there is an absence of evidence to support the non-moving party's case.  Celotex, 477 U.S. at 322; Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004).  "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as

6

a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party. Matreale v. N.J. Dep't of Military & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007); Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001).

## C. DISCUSSION

### 1. Exhaustion of Administrative Remedies

In support of this Motion, Defendants argue that summary judgment should be granted because Plaintiff failed to exhaust his administrative remedies prior to suing. Defendants assert that Plaintiff's PREA complaint is insufficient for exhaustion purposes. ECF No. 96 at 7. While the PREA policy set forth in DC-ADM 008 relates to reporting incidents of sexual abuse or sexual harassment, Defendants argue Plaintiff is not pursuing a claim of sexual abuse or harassment in this case. Id. at 7-8. Rather, Defendants contend that Plaintiff's claim arises out of the "digital recording and storing of Plaintiff's naked image, and images of him using the bathroom on a regular basis." Id. at 8 (quoting ECF No. 26 ¶ 10). Defendants note that Plaintiff's claim arises out of the Fourth—and not the Eighth—Amendment, and that the DOC does not consider properly conducted strip searches to violate the PREA. Id. As a result, Defendants argue, Plaintiff needed to seek relief through the grievance process set forth in DC-ADM 804. Id. at 8-9. Because Plaintiff did not submit a grievance under DC-ADM 804, Defendants maintain that the Court should enter judgment in their favor. Id. at 9.

7

In response, Plaintiff argues that grievances on sexual abuse must be addressed using the PREA process set forth DC-ADM 008, which he followed. ECF No. 103 at 8-9 (citing Landau v. Lamas, No. 3:15-cv-1327, 2018 U.S. Dist. LEXIS 176031 (M.D. Pa. Oct. 11, 2018)). Plaintiff complained of "voyeurism" as defined by DC-ADM 008, he argues, which falls within the definition of "sexual abuse" under this policy. Id. Plaintiff also argues that his Fourth Amendment claim arises out of an "invasion of privacy," and it therefore relates to his underlying PREA complaint. Id. at 9.

### a. Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that a prisoner exhaust available administrative remedies before filing an action challenging prison conditions or experiences. Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner, confined in any jail, prison or correctional facility until such administrative remedies are exhausted." 42 U.S.C. § 1997e(a).

"Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." Jones v. Bock, 549 U.S. 199, 204 (2007). "This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." Id. Thus, the benefits of the exhaustion requirement "include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Id. at 219.

As the United States Court of Appeals for the Third Circuit has explained:

> The PLRA requires inmates to exhaust prison grievance procedures before suing in court. 42 U.S.C. § 1997e(a). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." Jones, 549 U.S. at 218, 127 S. Ct. 910 (quoting Woodford v. Ngo, 548 U.S. 81, 88 (2006)).

Robinson v. Superintendent Rockview SCI, 831 F.3d 148, 153 (3d Cir. 2016).

"The burden to plead and prove failure to exhaust as an affirmative defense rests on the defendant." Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018) (citing Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002)). "But once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." Id. (citing Tuckel v. Grover, 660 F.3d 1249, 1253-54 (10th Cir. 2011)).

### b. DOC Policies

The DOC Inmate Handbook provides inmates with information about how to raise and resolve problems through various channels.[2] The policies at issue here are: (1) DC-ADM 804 concerning the Inmate Grievance System; and (2) DC-ADM 008 concerning the PREA.

#### (1) DC-ADM 804

The subject of DC-ADM 804 is the "Inmate Grievance System." ECF No. 98-4 ¶ 2. DC-ADM 804 provides a multi-level procedure by which an inmate can "seek resolution of problems or other issues arising during the course of confinement." Id. ¶¶ 3-4.

Under this policy, inmates must submit a grievance on a pre-printed grievance form at the inmate's institution within fifteen working days of the incident, and then appeal through two levels of administrative review. Id. ¶¶ 4-5. In submitting the initial grievance, inmates are

---

[2] See DOC Inmate Handbook, available at
https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/2017%20DOC%20Inmate%20Handbook.pdf

9

required to include various details, such as a statement of facts relevant to the claim and the identity of any individuals directly involved. Id. at 11. If an inmate desires compensation or other legal relief typically available from a court, he must request this relief in his grievance. Id.

### (2) DC-ADM 008

DC-ADM 008 relates to the PREA. ECF No. 98-1 at 2. Under DC-ADM 804, "a grievance regarding an allegation of a sexual nature (abuse/harassment) against a staff member or inmate-on-inmate sexual abuse will not be addressed through the Inmate Grievance System," and it is instead addressed through DC-ADM 008. ECF 98-4 at 11.

Plaintiff claims that he submitted a PREA complaint related to voyeurism, which is designated as a category of "sexual abuse" under DC-ADM 008. ECF No. 98-1 at 34, 85; ECF No. 98-3 at 70. Under DC-ADM 008, "Voyeurism by a Staff Member" means:

> An invasion of privacy of an inmate for reasons unrelated to official duties, such as peering at an inmate who is using a toilet in his/her cell to perform bodily functions; requiring an inmate to expose his or her buttocks, genitals, or breasts; or taking images of all or a part of an inmate's naked body or of an inmate performing bodily functions.

ECF No. 98-1 at 87.[3]

### c. Plaintiff failed to exhaust his administrative remedies.

Upon review, Plaintiff failed to exhaust his administrative remedies. Although Plaintiff claims that he reported "voyeurism" under DC-ADM 008, such conduct only relates to "an invasion of privacy *for reasons unrelated to official duties*." Id. (emphasis added). Here, the video surveillance and recording of an inmate strip search relates to official duties, maintaining security relative to contact visits. Therefore, it is not "voyeurism."

---

[3] An amended version of this policy became effective after this lawsuit was initiated, which states that "[a] properly authorized and conducted strip search or the removal of any unauthorized barrier which obstructs viewing into an inmate's living quarters or sanitary facilities shall not be considered voyeurism, unless the individual 'leers.'" ECF No.97 ¶ 22.

Because Plaintiff did not report conduct that falls under DC-ADM 008, he was required to submit a grievance pursuant to DC-ADM 804. He did not do so, and he does not submit any evidence that the grievance process was unavailable to him.[4] Accordingly, Plaintiff failed to properly exhaust his administrative remedies. For these reasons, the Motion for Summary Judgment should be granted.

### 2. Fourth Amendment claim

In the alternative, Defendants argue that Plaintiff cannot prove his Fourth Amendment claim because the visiting room strip searches are conducted in a reasonable manner. Defendants point to various precautions that have been implemented to protect inmates' privacy, including the use of the security barrier; limiting officials' access to and ability to view the video feed; and overwriting any recordings within approximately 30-45 days, unless there is a legitimate reason to preserve the video. ECF No. 96 at 14-15. To the extent Plaintiff's claim arises out of female staff seeing the videos, Defendants argue that there is no evidence this has occurred. Id. at 15. Defendants also refer the Court to a recent United States District Court for the District of Delaware decision in which the court found no constitutional violation with respect to video recording and cross-gender observation of strip searches. Id. at 15-16 (citing Fatir v. Phelps, No. 18-933, 2019 WL 2162720 (D. Del. May 17, 2019)). As a result, Defendants argue that Plaintiff fails to state a Fourth Amendment claim, and summary judgment alternatively should be granted on this basis. Id. at 18.

In response, Plaintiff argues that the Motion for Summary Judgment should be denied because there are genuine issues of material fact. ECF No. 103 at 2. Plaintiff argues the searches are not reasonably conducted because female officers could view the video footage; the

---

[4] The Court also notes that Plaintiff has used the grievance system at SCI-Greene about other issues not relevant to this action. ECF No. 98-4 ¶ 18.

11

security cage has, at times, not been used, leading to his private areas being recorded; and the DOC's justification for recording the searches "has nothing to do with preventing the smuggling of contraband." Id. at 2-6. Plaintiff further claims, without evidentiary support, that the policy was imposed for retaliatory purposes.[5] Id. at 3. In addition, Plaintiff argues that recording the strip searches is not permissible under Turner v. Safley, 482 U.S. 78 (1987). ECF No. 103 at 6. In particular, Plaintiff argues that there is no rational connection between SCI-Greene's policy regarding strip searches and a governmental interest because the primary rationale for the strip searches (preventing contraband) differs from the reason for recording these searches (preventing altercations and abuse). Id. at 7. There are viable alternatives to the existing policy, he argues, because SCI-Greene could place another officer to observe the search, and any camera could be focused on the officer. Id. at 7-8.

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. Under the Fourth Amendment, "[p]rison inmates retain certain protections . . . despite their incarcerated status, including the right to bodily privacy." Bey v. NJ Dep't of Corr., No. 18-3693, 2018 WL 5784999, at *5 (D.N.J. Nov. 5, 2018) (citing Parkell v. Danberg, 833 F.3d 313, 326 (3d Cir. 2017)). As this Court has stated:

> As an initial matter, inmates do not have a Fourth Amendment right to be free of strip searches, which may be conducted by prison officials without probable cause provided that the search is conducted in a reasonable manner. See Bell v. Wolfish, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). In Bell, the Supreme Court held that a prison rule requiring pretrial detainees to expose their body cavities for visual inspection as part of a strip search conducted after every contact visit with a person from outside the facility did not violate the Fourth Amendment. Recently, in Florence v. Bd. of Chosen Freeholders of County of Burlington, 132 S. Ct. 1510, 182 L. Ed. 2d 566 (2012), the Supreme Court held that a jail policy of

---

[5] As purported support for this argument, Plaintiff cites Zaken's statement that SCI-Greene officials decided to videotape strip searches to address incidents in which corrections officers were required to use force or allegations of abuse were made. ECF No. 103 at 3. Nothing in Zaken's statement indicates that this policy was enacted as a retaliatory measure.

> requiring that persons admitted to the jail remove their clothing and expose their genital areas for visual inspection as a routine part of the intake process also did not violate the Fourth Amendment. In doing so, the Court re-emphasized that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." Id. at 1517. Indeed, where security is involved, "deference must be given to the officials in charge of the jail unless there is substantial evidence demonstrating their response to the situation is exaggerated." Id. at 1518 (citation and internal quotation marks omitted). "[I]n the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to [legitimate security interests,] courts should ordinarily defer to their expert judgment in such matters." Bell, 441 U.S. at 548 (citation omitted); Florence, 132 S. Ct. at 1518.
>
> Thus, in the context of the Fourth Amendment, courts must conduct a balancing of the need for a particular search against the invasion of personal rights that the search entails. "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Bell, 441 U.S. at 559. Strip searches that are excessive, vindictive, harassing, or unrelated to any legitimate penological interest may violate the Fourth Amendment. See, e.g., Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988).

ECF No. 29 at 5 (quoting Watson v. Beard, Civ. A. No. 09-87J, 2013 U.S. Dist. LEXIS 122756, at *20-22 (W.D. Pa. Aug. 28, 2013)); see also Small v. Wetzel, 528 F. App'x 202, 207 (3d Cir. 2013) ("ascertaining the reasonableness of prison-security measures under the Fourth Amendment requires courts to consider" the foregoing factors set forth in Bell) (citing Bell, 441 U.S. at 559).

Upon consideration of the record, Plaintiff cannot establish that the policy at issue violates his Fourth Amendment rights. Plaintiff does not challenge constitutionality of the strip searches. Instead, he argues that SCI-Greene's policy of video recording and storing the recordings of these searches violates his rights. The mere fact that a strip search is video recorded, however, does not give rise to constitutional violation. See Watley v. Pike Cnty., No. 3:17-cv-1539, 2018 WL 6018903, at *11 (M.D. Pa. Nov. 16, 2018) (collecting cases); see also Fatir v. Phelps, No. 18-933, 2019 WL 2162720, at *6 (D. Del. May 17, 2019) (same).

Cases in which courts have held that video recorded strip searches violate constitutional rights have implicated privacy concerns beyond the fact of recording, such as an official of the opposite sex viewing or recording the search. Watley, 2018 WL 6018903, at *11 (citing Baggett v. Ashe, 41 F. Supp. 3d 113, 122 (D. Mass. 2014) (holding that female inmates' Fourth Amendment rights were violated by policy of male officer videotaping strip searches)). Those factual circumstances are not present here. There is no evidence that female officers have viewed the strip searches or recordings. As Defendants point out, female officers are prohibited from conducting strip searches at SCI-Greene, and there are no female officers assigned to the Security Office, where the video feed is available. In addition, SCI-Greene has implemented various measures designed to protect inmates' privacy, including the use of an opaque barrier to shield inmates' private areas from the camera's view; restricting access to the video feed; viewing or storing the recordings only as needed; and automatically deleting recordings within 30-45 days unless there is a demonstrated need to preserve them.

Although Plaintiff argues that the cage door has not been closed on several occasions, Defendant Zaken has acknowledged lapses in implementing the video surveillance policy, which have since been corrected. Because Plaintiff's claim arises out of SCI-Greene's policy, this fails to create a genuine issue of material fact as to whether the policy, itself, violates his Fourth Amendment rights. In any event, these incidents do not raise privacy concerns beyond the mere fact of video recording the strip searches. Simply recording a strip search—with or without a security cage—does not violate an inmate's Fourth Amendment rights. See Watley, 2018 WL 6018903, at *11. Thus, under Bell, the scope of the recording policy is reasonably balanced by the restrictions placed on it.

To the extent Plaintiff refers the Court to Turner, this decision also does not support his claim. In Turner, the United States Supreme Court held that, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner, 482 U.S. at 89. In resolving this inquiry, courts consider these factors:

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it, and this connection must not be so remote as to render the policy arbitrary or irrational. Second, a court must consider whether inmates retain alternative means of exercising the circumscribed right. Third, a court must take into account the costs that accommodating the right would impose on other inmates, guards and prison resources generally. And fourth, a court must consider whether there are alternatives to the regulation that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

Daley v. Lappin, 555 F. App'x 161, 165 (3d Cir. 2014) (citing DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000)).

Here, SCI-Greene's policy is reasonably related to a legitimate penological interest. There is a valid, rational connection between the practice of recording searches with the legitimate interests of preventing the smuggling of contraband and properly investigating allegations of abuse against prison staff and inmates. As courts have held, "security cameras are an expected part of the prison environment," and they help to increase the overall security of the prison. Fatir, 2019 WL 2162720, at *10; Garrett v. Thaler, 560 F. App'x 375, 380-81 (5th Cir. 2014). Having video footage on hand for a particular incident is rationally related to investigation needs, especially if the footage is automatically deleted after no incident has occurred. Indeed, the United States District Court for the Eastern District of Pennsylvania recently held that the government had a duty to preserve video footage of an assault that led to a prisoner's civil lawsuit. See Bistrian v. Levy, 448 F. Supp. 3d 454, 471 (E.D. Pa. 2020).

Plaintiff does not proffer a plausible alternative to the current policy under <u>Turner</u>. He argues that SCI-Greene could, instead, position a second officer to view all strip searches. Having more personnel view the strip searches, however, implicates privacy concerns that do not exist with a recording that does not capture inmates' private areas and is only viewed as needed. Moreover, this alternative imposes additional staffing costs, while introducing the potential for human error and credibility challenges that are not present with video. To the extent that Plaintiff argues that the camera should focus on the officer, only, it would not adequately record all incidents between inmates and officers. Plaintiff therefore fails to establish that the policy is unreasonable under <u>Turner</u>. Accordingly, the Court should grant summary judgment with respect to Plaintiff's Fourth Amendment claim.

### D.  CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' Motion for Summary Judgment, ECF No. 95, be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing

objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.


Dated: November 2, 2020                                   Respectfully submitted,


                                                              **_/s/ Maureen P. Kelly_**
                                                              MAUREEN P. KELLY
                                                              UNITED STATES MAGISTRATE JUDGE


cc:      The Honorable J. Nicholas Ranjan,
           United States District Judge

           Thuy Van Vo
           KJ 8911
           SCI-Greene
           175 Progress Dr.
           Waynesburg, PA 15370

           All counsel of record by Notice of Electronic Filing