# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| THUY VAN VO, | ) |
| Plaintiff, | ) 2:18-CV-1364-NR |
| v. | ) |
| ROBERT GILMORE, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

### J. Nicholas Ranjan, United States District Judge

Plaintiff Thuy Van Vo is a prisoner at SCI-Greene. Defendants are SCI-Greene's Superintendent, Deputy Superintendent, and Security Captain. In this lawsuit, Mr. Vo alleges that his Fourth Amendment right to bodily privacy was, and continues to be, violated by SCI-Greene's policy of digitally recording and storing images or video of inmate strip-searches.

Presently before the Court are Mr. Vo's objections to Magistrate Judge Maureen P. Kelly's Report & Recommendation that Defendants' motion for summary judgment be granted. ECF 118; ECF 123. Under 28 U.S.C. § 636(b)(1)(C), the Court must make a *de novo* determination of any portions of the Report & Recommendation to which a party objects. The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Court may also recommit the matter to the magistrate judge with instructions.

This Court previously granted summary judgment on what appears to be a verbatim identical complaint in *Gray v. Gilmore*, No. 18-1414, 2021 WL 422802 (W.D. Pa. Feb. 8, 2021) (Ranjan, J.). For substantially the same reasons, the Court overrules Mr. Vo's objections, adopts Judge Kelly's Report & Recommendation, and grants summary judgment to Defendants here, as well.

***First,*** the Court overrules Mr. Vo's objections to Judge Kelly's determination that he failed to exhaust his administrative remedies. The issue here is whether Mr. Vo properly submitted his grievance using a form applicable to DC-ADM 008—a special procedure intended to address claims of inmate sexual abuse, including "voyeurism" by prison staff. Defendants argue, and Judge Kelly agreed, that Mr. Vo was instead required to submit his complaint via DC-ADM 804—a more generalized administrative process intended to address the vast majority of inmate grievances.

Based on the evidentiary record, the Court agrees that DC-ADM 804 was the right procedure here, and thus that Mr. Vo failed to properly exhaust his administrative remedies. The relevant portion of DC-ADM 008 only encompasses "voyeurism" that amounts to "an invasion of privacy ***for reasons unrelated to official duties***." ECF 98-1, p. 87 (emphasis added). Here, Mr. Vo's operative amended complaint clarifies that his "one and only claim" is a challenge to "the digital recording and storing of [his] naked image, and image[s] of him using the bathroom on a regular basis." ECF 26, ¶ 11; *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity." (citations omitted)). In other words, Mr. Vo's sole cause of action is a challenge to SCI-Greene's official policy and practice of videorecording strip-searches, not voyeurism by staff members for "unofficial" reasons. Whether that policy is constitutional or not, it is certainly not "unrelated to official duties." Mr. Vo was thus required to proceed through the usual inmate grievance process under DC-ADM 804.[1]

---

[1] In reaching this conclusion, the Court need not, and does not, decide whether DC-ADM 008 might be an appropriate means of exhausting administrative remedies where an inmate claims that prison staff members deviated from established strip-search policies for unofficial reasons, such as to humiliate inmates.

Here, as discussed, Mr. Vo chose to explicitly limit his claim to challenge the prison's official policy and practice of "videorecording" and temporarily "storing"

***Second,*** Mr. Vo objects to Judge Kelly's conclusion that Defendants' policy does not violate his privacy rights under the Fourth Amendment. The Court overrules that objection, as well. Indeed, as Judge Kelly correctly explained, SCI-Greene's official policy and practice—which is what is relevant for purposes of Mr. Vo's claim—is reasonable and consistent with the Fourth Amendment. *See Gray v. Gilmore*, No. 18-1414, 2021 WL 422802, at \*2 (W.D. Pa. Feb. 8, 2021) (Ranjan, J.) ("As is well established, using a camera to record a strip search in a prison does not, by itself, amount to a constitutional violation." (cleaned up)).

That is, the videorecording policy is reasonably related to Defendants' legitimate, penological interest in deterring and properly investigating both the smuggling of contraband and the alleged abuse of prison staff and inmates during strip-searches. *See Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 326, (2012) ("The Court has confirmed the importance of deference to correctional officials and explained that a regulation impinging on an inmate's constitutional rights must be upheld if it is reasonably related to legitimate penological interests." (cleaned up)); *see, e.g., Davis v. Florence*, 600 F. App'x 26, 27 (2d Cir. 2015) ("[T]he defendants showed that their practice of … recording strip frisks via wall-mounted video camera is reasonably related to the legitimate interests

---

images of inmate strip-searches. Since there is no question that this videorecording was authorized by official policy, and thus not subject to challenge under DC-ADM 008, the circumstances of this case are distinguishable from those in which courts have found the boundaries between DC-ADM 008 and DC-ADM 804 to be so "opaque" as to be incapable of enforcement. *See, e.g., Landau v. Lamas*, No. 15-1327, 2019 WL 3502627, at \*7 (M.D. Pa. Aug. 1, 2019), ("The confusing nature of DC-ADM 804 and DC-ADM 008 have led district courts in this Circuit to conclude that DC-ADM 804 and DC-ADM 008, as to corollary claims 'regarding sexual abuse' create an opaque, unavailable administrative remedial scheme with respect to those claims." (cleaned up)); *Sarvey v. Wetzel*, No. 16-157, 2018 WL 1519072, at \*5 (W.D. Pa. Mar. 28, 2018) (Baxter, M.J.) ("Here, the DC-ADM 804 and DC-ADM 008 … demonstrate that as to corollary claims 'regarding' sexual abuse, the administrative remedy scheme is unavailable due to its opaqueness/opacity." (cleaned up)).

in both inmate and staff security at Sullivan."); *Watley v. Pike Cty.*, No. 17-1539, 2018 WL 6018903, at *11 (M.D. Pa. Nov. 16, 2018) ("Using a camera to record a strip search in a prison does not, by itself, amount to a constitutional violation."); *Bellamy v. City of New York*, No. 16-772, 2017 WL 979064, at *3 (S.D.N.Y. Mar. 13, 2017) ("[T]here is no basis to find that the presence of a camera, by itself, was unreasonable. Indeed, the presence of cameras may assist prisoners by ensuring that government officials do not abuse prisoners while conducting searches.").

Further, Defendants' policy of viewing and preserving video footage only when there is a documented incident, allegation of abuse, or other just cause is also reasonable and consistent with a policy aimed at protecting the interests described above. Finally, Defendants have adopted reasonable safeguards to prevent unnecessary invasions of privacy, including: (1) installing a security cage to prevent recording of inmates' genitals and private areas; and (2) using a "fixed" camera that focuses only on the strip-search area and that does not record the bathroom area.[2]

In response, Mr. Vo points to alleged violations of these policies by prison staff. For example, he alleges, and Defendants acknowledge, that staff members have left the security cage door open at times, potentially causing inmates' genitals to be exposed for the camera (an issue that Defendants say has since been addressed). He also contends that female staff members have been assigned to the Security Office where they could, in theory, view footage of male inmates being strip-searched.[3]

---

[2] Mr. Vo disputes that the camera is "fixed," ECF No. 104 ¶ 17, but, as Judge Kelly noted, he has not substantiated his claim. That is, he has not obtained evidence through discovery to establish that the camera can aim at the bathroom area, let alone that it is aimed there, or that it was used to record video footage of Mr. Vo.

[3] Defendants say they are not aware of any instance in which a female guard was assigned to the office where strip-search recordings are stored, but they also admit that female officers are not expressly precluded from that area by policy. For purposes of summary judgment, the Court credits Mr. Vo's plausible assertion that female guards have previously been assigned to or otherwise accessed the Security Office. Even so, there is no evidence that a female guard viewed strip-search video

But Mr. Vo chose not to assert claims against Defendants or other prison staff members based on specific incidents of misconduct or abuse.[4] Instead, what's relevant here is that there is no evidence of any *official policy or practice* of recording inmates' genitals during strip searches, of authorizing opposite-sex guards to view inmate strip-search footage, or, for that matter, of allowing gratuitous viewing of such footage by guards for any reason. Moreover, Defendants' policy of only retaining strip-search video for 30 to 45 days, absent a need to retain it for a longer period, helps to mitigate any privacy concerns associated with non-compliance by staff.

In sum, based on the record, the Court agrees that there is no genuine dispute of material fact as to Mr. Vo's claim that Defendants have violated his Fourth Amendment rights merely by implementing a policy authorizing "the digital recording and [temporary] storing" of Mr. Vo's "naked image." ECF 26, ¶ 11. In general, videorecording prisoner strip searches serves legitimate penological interests and is consistent with the Fourth Amendment. Indeed, the Court is mindful that the presence of video cameras often serves to *protect* prisoners from physical or sexual abuse, invasions of privacy, and other civil-rights violations that might otherwise go unpunished. *See, e.g.*, *Ringgold v. Keller*, 608 F. App'x 102, 104 (3d Cir. 2015) ("From the footage, we believe a jury could find Zosky and/or Mari used excessive force on Ringgold."); *see also Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 519 (D.N.J. 2008) ("In a case of one person's word against the word of another, the

---

footage of any inmate, let alone footage of Mr. Vo. More importantly, given the narrow focus of Mr. Vo's claims, there is no evidence that Defendants have an official policy or practice of allowing female guards to view strip-search footage of male inmates.

[4] To the extent that some of the alleged incidents involved inmates other than Mr. Vo, he does not have standing to assert claims on their behalf. *See Calipo v. Wolf*, No. 18- 320, 2019 WL 6879570, at *4 (W.D. Pa. Nov. 15, 2019) (Lanzillo, M.J.) ("It is axiomatic that an inmate lacks standing to assert complaints on behalf of other inmates.") (citations omitted), *report and recommendation adopted*, No. 18-320, 2019 WL 6877181 (W.D. Pa. Dec. 17, 2019).

unbiased eye of a surveillance camera would lend a great deal of credibility to one side's version of the events."). Moreover, the particular policy adopted by Defendants here includes adequate safeguards to protect prisoner privacy and avoid gratuitous filming of genitals or other private areas. Any constitutional violations that result from staff members *violating* Defendants' policy may, of course, be addressed through litigation aimed at those specific violations.

For all these reasons, the Court will adopt Magistrate Judge Kelly's recommendations and overrule Mr. Vo's objections. Defendants' motion for summary judgment is **GRANTED**. Final judgment shall be entered in favor of Defendants, and the Clerk of Court shall mark this case **CLOSED**.

DATE: May 6, 2021                                    BY THE COURT:

                                                     /s/ *J. Nicholas Ranjan*
                                                     United States District Judge